**WASHINGTON, MARLBORO & ANNAPO-LIS MOTOR LINES, Inc. v. PUBLIC UTILITIES COMMISSION OF DISTRICT OF COLUMBIA et al.**

Civ. A. No. 2831–49.

United States District Court
District of Columbia.

April 13, 1950.

See also, D.C., 114 F.Supp. 328.

James P. Donovan, Washington, D. C., for Washington, Marlboro & Annapolis Motor Lines, Inc.

Vernon E. West, Lloyd B. Harrison, Washington, D. C., for Public Utilities Commission of District of Columbia.

Edmund L. Lewis, F. G. Awalt, Daryal A. Myse, Raymond Sparks, Washington, D. C., for Capital Transit Co.

McLAUGHLIN, District Judge.

### Nature of Case

This is an appeal by the Washington, Marlboro and Annapolis Motor Lines, Inc., hereinafter called W. M. & A., from the orders of the Public Utilities Commission of the District of Columbia, hereinafter called the Commission, in proceedings designated as P.U.C. No. 3489, Formal Case No. 383. The subject matter of the proceedings and orders is "bus service of the Capital Transit Company is South East Washington, District of Columbia," as here-

inafter more specifically set forth. By application and order of this Court pursuant thereto Capital Transit Company, herein after called C.T.C., was granted leave to intervene in this action as a party appellant.

## Statement of Facts

The Washington, Marlboro and Annapolis Motor Lines was organized as a Delaware corporation in 1926. Since that time it has operated routes in the District of Columbia under the authority of the Public Utilities Commission of the District of Columbia, and at rates of fare fixed by that Commission. The routes of service maintained by the W. M. & A. line are between a western terminus at 11th and Pennsylvania Avenue, N. W. and various points along Pennsylvania Avenue, S. E. east of the Anacostia River and along Suitland Road, Bowen Road, Southern Avenue and Alabama Avenue, all in the southeast section of Washington. The line also operates a local service between Bradbury Heights, S. E. and Commodore Barney Circle at 17th and Pennsylvania Avenue, S. E. There is in operation a free transfer service between W. M. & A. buses and the buses and street cars of the Capital Transit Company at Pennsylvania and Branch Avenues, Minnesota and Pennsylvania Avenues, and at Commodore Barney Circle. The effect of the said routes is to provide direct service to downtown Washington, or by reason of the free transfer system to provide service by connecting carrier to any part of Washington.

In April 1942, after a hearing in which W. M. & A. was recognized as a necessary party (see P.U.C. No. 3269, Formal Case No. 310), the P.U.C. issued Order No. 2167 which permitted the Capital Transit Company to extend its then existing line by moving its eastern terminus of the C–2 line from a loop at 32nd and Alabama Avenue to a loop at 36th and Alabama Avenue, S. E. The W. M. & A. appealed to this Court from that order but after W. M. & A. had made an independent investigation which revealed that the competition offered by the Capital Transit Company at its new terminus would not result in too great a disadvantage, the appeal was not prosecuted.

In May 1948 an informal hearing was conducted by the P.U.C. in connection with the request of certain residents on the loop established at 36th and Alabama Avenue, S. E. for a relocation of said loop. The W. M. & A. was notified of this hearing and appeared. Following this hearing the P.U.C. announced that the matter would be considered further and a decision reached as to whether or not a formal hearing would be held.

On December 10, 1948 the P.U.C. issued "P.U.C. No. 3489, Formal Case No. 383" which was captioned "Notice of Hearing", "In the matter of Bus Service of the Capital Transit Co. in Southeast Washington". This notice recited that a hearing had been held pursuant to a request for service desired in the vicinity of Alabama Avenue and 15th Street, S. E. submitted by the Garfield-Douglass Heights Citizens' Association; that certain modifications of the original request had been received; and that the Capital Transit Company had submitted certain proposals for changes in the existing service in that area; and that in view of these circumstances the P.U.C. proposed to hold a formal hearing on the proposals of the Capital Transit Company and certain modifications thereof. The proposals of the Capital Transit Company were

1). The extension of the W–4 line.

2). The extension of the existing W–2 line and the change in its designation to C–2.

3). The discontinuance of the existing C–2 line as such.

4). The discontinuance of the existing V–8 line and its substitution being designated W–2, as noted in proposal 2 above.

On January 5, 1949 the P.U.C. consolidated the above proceeding with a request for elimination of the special five cent fare on route W–4 and continued the hearing to February 2, 1949 in order to allow further time to consider the consolidation proceedings. The P.U.C. contends that this notice was posted in the District Building and was publicized in the press. W. M. & A. contends that it received no notice either actual or statutory, and argues further that

the notice did not offer any information as to the scope which the hearing covered in the way of the establishment of competitive service by C.T.C.

As a result of the above hearing on May 4, 1949, the P.U.C. issued its Order No. 3530 which established a new terminus for the existing Capital Transit line C–2 by extending the line to Pennsylvania and Alabama Avenues, S. E.; extended Capital Transit's W–2 line from its existing terminal, along the same route of the C–2 line to Barney Circle; extended the Capital Transit's W–4 line from its existing terminal to the intersection of Alabama and Pennsylvania Avenues, S. E.

Both W. M. & A. and Capital Transit filed applications for reconsideration pursuant to Section 43–704 of the District of Columbia Code. By Orders Nos. 3546 and 3547, dated June 9, and 13, 1949, respectively, these applications for reconsideration were denied by the Commission. W. M. & A. contends that it was not furnished with P.U.C. Order No. 3530 and learned of the order from newspaper sources. P. U.C. admits that it furnished W. M. & A. no copy of said order.

On June 29, 1949 by Order No. 3553 the Commission amended its Order No. 3530 to require the continuance and extension of C–2 line for an experimental period of six months, and

On July 1, 1949 the W. M. & A., pursuant to section 43–705 of the District of Columbia Code, filed its appeal in this Court from P.U.C. Order No. 3530 as amended, by No. 3546, and No. 3547. Since its appeal is based upon its application for reconsideration the following points relied upon in its application are argued upon this appeal:

1). P.U.C. Order No. 3530 and the proceeding in Formal Case No. 383 are void for failure to give statutory notice to the W. M. & A.

2). The said order and proceedings are void for failure to make the applicant a party to the proceedings.

3). The proceedings are void in that Order No. 3530 illegally sets up competitive service to the service of W. M. & A. without the said Commis-

sion having given to W. M. & A. an opportunity to take part in the proceedings resulting in the establishment of such competitive service.

4). Order No. 3530 is illegal and confiscatory, and deprives the W. M. & A. of its rights and property without compensation or due process of law.

The petitioner asked the Court to suspend the Order No. 3530 pending final determination of the appeal, and to vacate the order and set aside the proceedings held in Formal Case No. 383. The suspension of the order was decreed by this Court on July 1, 1949.

The answer of P.U.C. denies that the petition stated a cause of action; admits that the proceeding in Case No. 383 was without statutory notice to the W. M. & A. but alleges that such notice was not necessary, and denies that W. M. &. A. was a necessary party to the proceedings; denies that the routes created by Order No. 3530 are competitive with the petitioner's lines; and asserts that an official of the W. M. & A. was present at the proceedings. The Answer of the Commission also alleged that the application of W. M. & A. for reconsideration was not in the proper form and as a result thereof the petitioner failed to exhaust his administrative remedies.

Meanwhile the Capital Transit Company was permitted to intervene in the action. This intervenor also asked the Court to vacate Order No. 3530 or in the alternative to enter an order permitting the abandonment of the C–2 line, and enjoining the Commission from preventing such abandonment.

Applicable Provisions of District of Columbia Code and P.U.C. Rules of Procedure

Title 43 of the District of Columbia Code (1940 Ed.) regulates the Public Utilities Commission in the District of Columbia, and prescribes the procedure to be followed in proceedings before the Commission and on appeal from orders of the Commission.

Section 409 contemplates a hearing before the Commission when a complaint has been lodged with it against the public util-

ity. Section 410 requires the utility to be given ten days' notice of hearing.

Section 414 provides that whenever the Public Utilities Commission itself believes that an investigation should be made of any matter relating to any public utility or any public need it may summarily on its own motion make such an investigation. Section 415 provides that if after such an investigation is made the Commission is satisfied that a formal hearing should be conducted "it shall furnish such public utility interested a statement notifying the public utility of the matters under investigation". Section 416 provides that "Notice of the time and place for such hearing shall be given to the public utility and to such other interested persons as the commission shall deem necessary".

Section 704 grants any public utility or any other person affected by an order of the Commission the privilege to file an application for reconsideration.

Section 705 provides for appeal from a denial of the application of reconsideration to the United States District Court.

There is no statutory directive for the manner of the giving of notice. Chapter 8 of the Rules of Practice and Procedure before the P.U.C. provides that notice shall be served upon all parties and copies filed with the Commission. Such rules make no provision for the serving of notice by publication.

### Points Relied upon by Appellant and Intervenor

The points relied upon by the appellant W. M. & A. and intervenor C.T.C. in their respective appeals from the order of the P.U.C. and upon which they base their contention that said order should be rescinded are as follows:

Points relied upon by W. M. & A.

1). The proceedings and orders in P.U.C. Formal Case No. 380 are void for failure to give statutory notice to W. M. & A.

2). Said proceedings and orders are void for failure to make W. M. & A. a party to the proceeding in P.U.C. Formal Case No. 383.

3). The said proceeding and Order No. 3530 are void in that said order set up competitive service to W. M. & A. without P.U.C. having given W. M. & A. an opportunity to take part in the proceeding resulting in the establishment of the same.

4). P.U.C. Order No. 3530 is illegal and confiscatory and deprives W. M. & A. of its rights and property without due process of law.

The points relied upon by C.T.C. are:

1). P.U.C. has no power to order extension of a line into an area in which C.T.C. has not made an application to extend its line.

2). That the order requiring the extension of C-2 and the establishment of W-4 without adequate findings or supporting evidence is in violation of Section 43-411 of the District of Columbia Code for 1940, and of Section 9(a) of the Administrative Code.

3). That the order extending the C-2 line is void and results in lack of due process because of failure to give C.T.C. adequate notice that such extension was contemplated by the scope of the hearing.

The points relied upon by the W. M. & A. in the opinion of the Court resolve themselves into the question as to whether the position of the W. M. & A. in the situation involved in the hearing is such as to require that notice of the hearing resulting in the order from which the appeal has been taken, is required in order to accord to the W. M. & A. due process of law to which it is entitled.

In order to determine whether the rights of W. M. & A. in the premises have been invaded, it is necessary to consider what interests of W. M. & A. if any, were involved in the hearing of which it was not given notice, and the effect upon the rights of W. M. & A. of failure to receive notice. It is the contention of W. M. & A. that 30% of all of its patrons originate or are destined for a stop in the vicinity of Fairfax Village, and that the effect of the order of the Commission extending the C-2 and W-4 lines of C.T.C. will be to create a

competitive transportation situation in the Fairfax Village area, which was not then and which is not now in existence, and which will not, of course, come into existence except for the extension of said C–2 and W–4 lines of the C.T.C., and that under the circumstances W. M. & A. was a "public utility interested" within the meaning of the term as used in Section 416, supra, so as to entitle it to notice of hearing. Further it is the position of the C.T.C. that the public interest does not require an extension of the C–2 line as contemplated by the extension order in question, and that the people in the area into which the extension of the C–2 line will be projected are now served adequately by the facilities of W. M. & A..

The P.U.C. contends that the routes established by Order No. 3530 do not set up competition between W. M. & A. and C.T.C., but that even if such is the case none of W. M. & A.'s legal rights have been invaded and that consequently it can not be heard to complain. The present situation is not unlike that which was presented to the local court of appeals in Clarksburg-Columbus Short Route B. Co. v. Woodring, 67 App.D.C. 44, 89 F.2d 788, 791, and in that case the court said:

"In the present situation, considering the sharp competitive conditions existing between the two companies here involved, it was impossible for the Secretary to arrive at a decision fixing 'just and reasonable' tolls in the absence of complete and full testimony as to all the conditions bearing upon the rights of these respective parties."

As to the contention of the Secretary that the plaintiff did not have a sufficient interest to entertain the suit since it could show no legal injury the court stated:

"This answer might be supported if the competition were merely between bridge companies not subject to governmental regulations."

The recent expression of the Supreme Court in the case Civil Aeronautics Bd. v. State Airlines, 1950, 338 U.S. 572, 70 S.Ct. 379, 383, 94 L.Ed. 353, appears to be pertinent in the situation. In that case the court said:

"State (appellant Airlines) argues, however, that since it never considered Piedmont (another airline) as a possible applicant for the routes awarded, it failed to produce available evidence and arguments to convince the Board that Piedmont was not fit and able to serve as a carrier on the routes. This challenge is substantial. The Board's major standard is the public interest in having convenient routes served by fit and able carriers. These questions are to be determined in hearings after notice. The prime purpose of allowing interested persons to offer evidence is to give the Board the advantage of all available information as a basis for its selection of the applicant best qualified to serve the public interest."

Federal Communications Commission v. Sanders, 1940, 309 U.S. 470, 642, 60 S.Ct. 693, 84 L.Ed. 869, 1037, referred to by the Supreme Court in its opinion in Civil Aeronautics Bd. v. State Airlines, supra, should also be noted for the expression of the court upon the effect of economic conditions upon the public interest when public service companies are placed in competition.

## Conclusions

It would seem to be impossible to determine whether the contentions of W. M. & A. in the above regard are sound or otherwise in the absence of evidence bearing upon the questions therein involved. The record is, of course, silent on the points involved in the said contentions of W. M. & A. for the obvious reason that W. M. & A. was not a party to the hearing and presented no testimony.

Involved in the question as to whether W. M. & A. could or should, under all the existing circumstances, have presented evidence at the hearing is the question as to whether W. M. & A. received actual notice of the hearing so as to have put it in position to have been called upon to protect any interests which may have been involved by the presentation of evidence regardless of the lack of

statutory notice, and, secondly, whether W. M. & A. has failed to exhaust its administrative remedy in an effort to have presented such evidence, and if it has so failed, whether it is now in position to complain. On the first point as to actual notice, the P.U.C. relies upon the posting of notice on the bulletin board in the District Building, and on the fact that the Washington daily newspapers carried accounts of the hearing. The Court is unwilling to charge the W. M. & A. with the result of the consequences of the hearing *upon notice of* such a character, and in the absence of further showing of actual notice is unwilling to hold that W. M. & A. has actually received notice of the hearing. In addition the P.U.C. relies upon an affidavit of its Secretary filed with the Court to the effect that an operating employee of the W. M. & A. was actually present during the course of the hearings in the proceedings before it. In this instance the Court likewise cannot charge the W. M. & A. with responsibility which would follow actual notice as a result of the showing or contention made by the affidavit. The W. M. & A. is entitled to such notice as will afford it reasonable opportunity to protect any of its interests which may be involved in the hearing, if such interests are involved, and the mere presence of an employee at the hearing is not sufficient to meet the requirement of reasonable notice. If it is assumed that the employee is vested with such power and authority by the employer as to cause notice to him to be binding on the employer, the record still does not supply a showing of such advance notice to the employer as to have afforded the employer a reasonable opportunity for the preparation to which it would normally be entitled.

Under the circumstances the Court concludes that the hearing involved a situation which might reasonably be held to have affected the vital interests of W. M. & A. Whether such interests were actually affected cannot be determined on the record in its present state. The Court is of the opinion that the W. M. & A. should have been accorded· an opportunity to present evidence in line with its contentions with respect to the question of the effect of the extension of the C–2 and W–4 lines of C. T.C. into Fairfax Village area, and also to present evidence with respect to the question as to whether the service rendered by W. M. & A. at present in that area in the absence of the proposed extension of C–2 and W–4 is such as to meet the requirements of service sufficient ·to provide adequate transportation in the public interest in that area.

The P.U.C. contends that the W. M. & A. has no standing in court because of failure to exhaust its administrative remedy under Section 43–704 of the Code. In effect the P.U.C. states that the appellant here did not request a reconsideration of Formal Case No. 383, but merely requested the Commission to expunge the record. Without passing upon the question as to what precise form a petition for reconsideration must take, this Court is of the opinion that the petition submitted to the Commission by W. M. & A. sufficiently complied with the requirements of the Code. Attention is called to the fact that the petition was captioned "Application to Reconsider", etc.; that paragraph one recites the fact that the application is filed in accordance with Title 43, Section 704 of the Code; and particularly to the fact that in its Order No. B256 in Formal Case No. 383 the Commission's order is captioned "Order denying application for reconsideration" and the body of the order states that W. M. & A. has filed an application for reconsideration. The Court is of the opinion that the pleading had the effect of advising the P.U.C. that the W. M. & A. was in fact seeking a reconsideration by the P.U.C. of its order. The purpose and intent of the statute appears to have been complied with in substance.

Section 43–705 provides as follows:

"Any such appeal shall be heard upon the record before the Commission, and no new or additional evidence shall be received by the said Court. *The said court, or any justice or justices thereof, before whom any such appeal shall be heard, may require and direct the Commission to receive addi-*

tional evidence upon any subject related to the issues on said appeal concerning which evidence was improperly excluded in the hearing before the Commission or upon which *the record may contain no substantial evidence.* Upon receipt of such requirement and direction the Commission shall receive such evidence and without unreasonable delay shall transmit to the said court the findings of fact made thereon by the Commission and the conclusions of the Commission upon the said facts.

"Upon the conclusion of its hearing of any such appeal the court shall either dismiss the said appeal and affirm the order or decision of the Commission or sustain the appeal and vacate the Commission's order or decision. In either event the court shall accompany its order by a statement of its reasons for its action, and in the case of the vacation of an order or decision of the Commission the statement shall relate the particulars in and the extent to which such order or decision was defective." (Italics supplied.)

By the terms and provisions of the above section of the statute the Court is empowered to require the reopening of the hearing in P.U.C. No. 3489, Formal Case No. 383, as amended, and to direct the P.U.C. to receive additional evidence of the W. M. & A. and of any other interested party. The Court concludes that such an order is proper in the circumstances so that evidence may be presented with respect to the effect of the proposed order upon the public interest in connection with transportation in the area affected by the order, including the effect of said order upon the ability of the W. M. & A. to serve the public interest in the operation of its facilities in connection with the proposals of extension and alteration of bus lines of the C.T.C. involved in P.U.C. No. 3489, Formal Case No. 383.

the Court holds:

As to the points raised by the C.T.C.

1). That the provisions of Section 43-208 and 43-411 of the District of Columbia Code of 1940, and the provisions of Section 11 of Public Resolution 47, 72d Congress, 2d Sess., Approved Jan. 14, 1933, 47 Stat. 752, 761, commonly referred to as "Section 11 of the Merger Act", empowers the P.U.C. to order an extension of a bus line into the area in question notwithstanding the absence of an application on the part of C.T.C. to make such extension.

The Court is of the opinion that the determination of this point is based upon and must be resolved by the provisions of the statutes under which the C.T.C. functions in the District of Columbia. Section 43-208 of the District of Columbia Code for 1940 provides in part as follows:

"Whenever the commission shall be of opinion * * * changes in * * the facilities of any common carrier ought reasonably to be made, or that any addition of service or equipment ought reasonably to be made thereto * * * the commission shall have power to make and serve an order directing that such * * * changes, or additions to service or equipment be made within a reasonable time and in a manner to be specified therein, and every such public utility is hereby required and directed to obey every such order of the commission."

Section 43-411 provides in part:

"* * * upon any investigation for the purpose of determining upon and requiring any reasonable extension or extensions of lines or of service that shall promise to be compensatory within a reasonable time, the commission shall have power to fix, determine, and require every such extension or extensions to be made and the terms and conditions upon which the same shall be made: Provided, That no hearing shall be had and no order shall be made respecting such extension or extensions, without notice to the public utility affected thereby, as provided in section 43-410."

Section 11 of the Merger Act, supra, reads as follows:

"Sec. 11. It is understood and agreed that nothing herein shall be

328

construed as creating any new rights of franchise to use the streets in the District of Columbia for transportation purposes: Provided, That the Capital Transit Company shall exercise and succeed to all of the property, rights, and franchises of the Capital Traction and the Washington Railway and Electric Companies, which they are required herein to vest in the Capital Transit Company, *subject, however, to the right of the Public Utilities Commission to order reasonable extension or reasonable abandonment of tracks and facilities."* (Italics supplied.)

 The Court feels that in the light of existing conditions it is only proper to call attention to the commonly accepted and rapidly developing trend of abandonment of street car rail lines and the substitution therefor of motor bus lines. It is the apparent contention of the C.T.C. (Brief of C.T.C. page 37) that Section 11 of the Merger Act by which the Commission is empowered "to order reasonable extensions or reasonable abandonment of tracks and facilities" is to be construed in so limited a way as to exclude from the scope of the Commission's powers under said Section, the power to order reasonable extension or abandonment of bus lines. A strict compliance with said interpretation of the C.T.C. could well result from a practical standpoint, in a situation in which, in order to secure service, the P.U.C. might be compelled to report to an order of extension of tracks into an area requiring additional public street transportation where an extension of bus service would be vastly more beneficial to the public and equally vastly more beneficial to the C.T.C. The illustration of the absurdity of such a necessity, of course, on the part of the P.U.C. to accomplish or produce adequate transportation is, in the Court's opinion, a sufficient answer to the contention that the provision of the Act must be limited to the extension of tracks, and that the word "facilities" in the Act should not be construed to include buses.

With respect to the contention of the C.T.C. that the extension of the C-2 line was duplicative of the present lines, and was ordered without adequate findings or supporting evidence, in violation of Section 43-411, District of Columbia Code, 1940, the Court in resubmitting the proceeding to the Commission affords the P. U.C. opportunity to give such consideration to the making of such findings of fact of the character referred to in the contention of the C.T.C. as it may deem prudent in the circumstances.

In resubmitting this proceeding to the Commission with the direction to permit W. M. & A. to introduce evidence concerning the extension of the C-2 line and the establishment of a W-4 line, the Court also directs that C.T.C. be permitted to offer in evidence testimony with regard to the proposals which it did not have an opportunity to introduce in the prior hearing.

Wherefore, the premises considered, it is by the Court this 8th day of April, 1950,

Ordered that this case be returned to the Public Utilities Commission for proceedings not inconsistent with the foregoing opinion.